UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 1:19-cr-129-1 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| JASON JOHNSON | ) | |
| also known as "BOSS P" | ) | Magistrate Judge Susan K. Lee |
| | ) | |

## MEMORANDUM OPINION

Before the Court is Defendant Jason Johnson's motion to suppress (Doc. 122). United States Magistrate Judge Susan K. Lee held an evidentiary hearing on the motion on July 9, 2020 (*see* Doc. 142), and filed a report and recommendation, recommending that the Court deny Defendant's motion (Doc. 145). Defendant filed objections to Magistrate Judge Lee's report and recommendation (Doc. 150), to which the Government has responded (Doc. 157). The Court has conducted a *de novo* review of the record as it relates to Defendant's objections and, for the following reasons, will: (1) **OVERRULE** Defendant's objections to the report and recommendation (Doc. 150); (2) **ACCEPT** and **ADOPT** the report and recommendation (Doc. 145); and (3) **DENY** Defendant's motion to suppress (Doc. 122).

### I. BACKGROUND

Defendant does not dispute the "Factual Background" as reflected in Magistrate Judge Lee's report and recommendation but objects to certain legal conclusions therein. (*See* Doc. 150.) After reviewing the record before the Court and finding the facts to be consistent with Magistrate Judge Lee's report and recommendation, the Court **ADOPTS BY REFERENCE** the facts as set out in the report and recommendation. (Doc. 145, at 1–8.); *see, e.g.*, *United States v.*

*Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). Defendant's objections to the report and recommendation are now ripe for review.

## II. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and to hear the witnesses and to assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

Additionally, although the Court is required to engage in a *de novo* review of specific objections, if the objections merely restate the arguments asserted in Defendant's earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Id.*

### III. ANALYSIS

Defendant objects to the following in the report and recommendation: (1) Magistrate Judge Lee's finding that Investigator Morgan's stop of Defendant outside of the City of Chattanooga was reasonable and did not violate Defendant's Fourth Amendment rights; and (2) Magistrate Judge Lee's finding that Investigator Morgan's *Terry* frisk of Defendant was reasonable. (Doc. 150, at 1.)

#### A. Reasonableness of Stop Outside of Chattanooga

Defendant argues that Magistrate Judge Lee erred in concluding that Morgan's extraterritorial stop of Defendant was constitutional by misapplying *United States v. Layne*, 6 F.3d 396 (6th Cir. 1993), and by concluding that the stop was a "joint stop." (*Id.* at 2–10.)

##### i. Layne *Analysis*

In *Layne*, the Sixth Circuit held that the defendant's arrest by one county's officers in another county was permissible—even though the arresting officers "were admittedly exercising police authority beyond their geographical jurisdiction"—because the arrest was valid under Tennessee's citizen's arrest statute. 6 F.3d at 398–99 (citing Tenn. Code Ann. § 40-7-109; *State v. Johnson*, 661 S.W.2d 854, 859 (Tenn. 1983)). The Sixth Circuit determined that, when an extraterritorial arrest is effectuated in a manner consistent with the citizen's arrest statute, such arrest does not violate the Fourth Amendment. *Id.* at 399. The Tennessee citizen's arrest statute, which the parties agree is relevant to this case, provides:

(a) A private person may arrest another:

(1) For a public offense committed in the arresting person's presence;

(2) When the person arrested has committed a felony, although not in the arresting person's presence; or

(3) When a felony has been committed, and the arresting person has reasonable cause to believe that the person arrested committed the felony.

Tenn. Code Ann. § 40-7-109(a).

In her report and recommendation, Magistrate Judge Lee reasoned that, because "public offense" as used in subsection (a)(1) includes misdemeanor offenses, the extraterritorial arrest was justified under the citizen's arrest statute "even though Defendant was not committing a felony." (Doc. 145, at 13.) Defendant argues that *Layne* is distinguishable because the Sixth Circuit only recognized subsection (a)(2) and (a)(3) as justifying an officer's arrest outside of his or her geographical jurisdiction. (Doc. 150, at 3.) He argues that *Layne* should not be extended to render constitutional arrests for misdemeanor offenses like the traffic offense for which he was arrested by Investigator Morgan. (*Id.*) He cites a New York district court case in which the court rejected the argument that, under *Layne*, extraterritorial arrests are constitutional. (*Id.* at 6 (citing *United States v. Wilson*, 754 F. Supp. 2d 450 (N.D.N.Y. 2010), *rev'd on other grounds*, 699 F.3d 235 (2d Cir. 2012)).) Defendant admits, however, that New York law, unlike Tennessee law, does not allow police officers to make citizen's arrests. (*Id.* at 6 n.6.)

The Court agrees with Magistrate Judge Lee's conclusion. Nothing in *Layne* indicates that arrests under subsection (a)(1) should be treated differently than those under subsections (a)(2) or (a)(3). Rather, the Sixth Circuit looked to the language of the statute to determine whether the arrest outside of the officers' geographical jurisdiction was justified by state law. *See Layne*, 6 F.3d at 399. Moreover, since *Layne*, at least one panel of the Sixth Circuit has found that arrests under section 40-7-109(a)(1) do not run afoul of the Fourth Amendment. *See, e.g.*, *Sisk v. Shelby Cnty., Tenn.*, 110 F.3d 64, at *3 (6th Cir. 1997) (unpublished table decision). In *Sisk*, an unpublished Sixth Circuit case applying *Layne*, the court of appeals found that an arrest by a special deputy was authorized under subdivision (a)(1) of the Tennessee citizen's arrest statute because (1) the plaintiff committed a public offense (driving under the influence),

(2) in the defendant's presence, and (3) the defendant informed the plaintiff of the cause of the arrest. *Id.* The court dismissed the plaintiff's 42 U.S.C. § 1983 claim for violation of the Fourth Amendment on these grounds. *See id.* So too here, the Court finds that Investigator Morgan's extraterritorial arrest was permissible under Tennessee Code Annotated § 40-7-109(a)(1) and thus did not violate Defendant's Fourth Amendment rights. *See id*; *Layne*, 6 F.3d at 399. Accordingly, the Court will **OVERRULE** Defendant's objection to Magistrate Judge Lee's *Layne* analysis.

### ii. Joint-Stop Analysis

Magistrate Judge Lee alternately concluded that the extraterritorial arrest was valid as a joint stop, because a Tennessee Highway Patrol officer—Trooper Ghazi—participated in the stop. (Doc. 145, at 14–15.) Defendant argues that the stop was not a "joint stop" with Trooper Ghazi because "Defendant stopped his vehicle in response to Investigator Morgan's actions" and the other officers were following Morgan's lead rather than effectuating a cooperative stop. (Doc. 150, at 8.)

Because the Court has concluded that Morgan's arrest was permissible under the Tennessee citizen's arrest statute, the Court need not determine whether the stop could also be justified as a "joint stop" with at least one officer who had jurisdiction in East Ridge, Tennessee. The Court will **OVERRULE** Defendant's objection to Magistrate Judge Lee's joint-stop analysis as moot in light of the Court's finding on the *Layne* issue.

### B. Reasonableness of *Terry* Frisk

The Supreme Court has held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."

5

*Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977).  Additionally, "a driver, once outside the stopped vehicle, may be patted down for weapons if the officer reasonably concludes that the driver 'might be armed and presently dangerous.'"  *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quoting *Mimms*, 434 U.S. at 112).  For the frisk to be reasonable, "the facts available to the officer at the moment of . . . the search" must "warrant a man of reasonable caution in the belief that the action taken was appropriate."  *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) ("[G]ood faith on the part of the arresting officer is not enough." (quoting *Beck v. Ohio*, 379 U.S. 89, 97 (1964))).  This determination is an objective one, and the Court must consider the totality of the circumstances.  *United States v. Noble*, 762 F.3d 509, 521–22 (6th Cir. 2014) (quoting *Joshua v. DeWitt*, 341 430, 443 (6th Cir. 2003); *Terry*, 392 U.S. at 27).  Reasonable suspicion "requires more than a mere hunch": "[i]t demands a particularized and objective basis for suspecting that the *particular person* is armed and dangerous."  *Id.* at 522 (citations omitted) (emphasis in original).

Here, Magistrate Judge Lee determined that Morgan's frisk of Defendant was reasonable based on the following facts:

> At the time of the frisk, Morgan knew ATF was engaged in an investigation that indicated Defendant was involved in large scale drug trafficking.  Morgan knew this Court had authorized a search warrant for the disclosure of GPS information about the location of Defendant's phone, which was being monitored by ATF.  Morgan had been told of, at least, Defendant's involvement with a drug trafficking organization with access to guns.  Morgan knew Defendant had returned from Atlanta, a place Morgan considered to be a drug trafficking hub, that day and had made a short stop at a house, which was consistent with drug trafficking based on Morgan's training and experience.  Moreover, Morgan's training and experience was that drug dealers were commonly armed.

(Doc. 145, at 18–19.)  Magistrate Judge Lee further pointed out that Morgan was familiar with Defendant's criminal history.  (*Id.* at 19.)

Defendant argues that Morgan did not testify to many "specific and articulable facts" that would warrant a frisk. (Doc. 150, at 10.) Defendant points out that Morgan had no involvement with Defendant or the investigation prior to the day the traffic stop was made and that his assumptions about Defendant's activity "ignor[ed] all reasonable non-criminal inferences" that could have been drawn. (*Id.* at 10–11.) Defendant further argues that nothing about Defendant's behavior or surroundings at the time of the stop indicated that he might be armed. (*Id.* at 11.)

From the Court's review of Morgan's testimony, it concludes that the facts available to him at the time of the frisk were enough to support a finding of reasonable suspicion that Defendant was armed. *See Noble*, 762 F.3d at 521–22 (6th Cir. 2014). Specifically, the Court considers that all of the following facts, taken together, were sufficient to warrant the frisk.

### i. Access to Weapons

Morgan testified that ATF agents informed him, prior to the arrest, that they were investigating Defendant for narcotics trafficking. (Doc. 161, at 26–27.) Specifically, Morgan stated that he received a phone call from ATF Special Agent Baldwin, during which Baldwin gave him a summary of what was going on with Defendant and requested his assistance. (*Id.* at 17.) Morgan later met with Baldwin to further discuss the investigation of Defendant. (*Id.* at 17–20.) Morgan testified that the ATF agents informed him that they believed Defendant had access to weapons and that he was involved in a drug-trafficking organization that had access to weapons. (*Id.* at 27–28.) Morgan further testified that he frequently encounters drug trafficking and firearms in his work. (*Id.* at 13.) He testified that, based on his experience in the gang unit of the Chattanooga Police Department, it was common for narcotics dealers to be armed. (*Id.* at 28.)

Morgan also testified that the participated in the surveillance of Defendant on the day that the arrest was made. (*Id.* at 14.) He testified that he was aware that ATF Special Agent Baldwin had a federal location data warrant to monitor the location of Defendant's cellphone. (*Id.* at 28–29.) Morgan further testified that when he called THP Trooper Ghazi, he gave him a brief summary of what was going on—including that Defendant was "involved in narcotics, possible firearms, violent history." (*Id.* at 33–34.) Morgan also knew that Defendant was returning from Atlanta and that he made a ten-to-fifteen-minute stop at a residence in East Ridge, Tennessee prior to the traffic stop. (*Id.* at 39.) Morgan testified that, "based upon all of the information that I had known at that time[—]coming from Atlanta, [Defendant's] experience, his history[—] [a] 10 [to] 15-minute stop would generally indicate a possible narcotic transaction, a drug deal." (*Id.*)

Additionally, Morgan testified that he reviewed Defendant's TOMIS record prior to the arrest. (*Id.* at 20–21.) Among the convictions on the record that Morgan reviewed were Defendant's convictions for evading arrest and reckless endangerment with a deadly weapon as well as various drug crimes. (*Id.* at 22.) Morgan testified that Defendant's criminal history caused him to think that Defendant "could possibly carry firearms especially if he's involved in these narcotics." (*Id.* at 22–23.) Morgan also noted that Defendant had a drug charge from the same day as the reckless-endangerment-with-a-deadly-weapon charge. (*Id.* at 23.) Finally, concerning Defendant's criminal history, Morgan testified that he knew Defendant had also been charged with robbery in the past. (*Id.* at 26.)

The Sixth Circuit has held that "a person's mere presence in a car, which the police believe is connected to drug trafficking, is not an automatic green light for frisking that person." *Noble*, 762 F.3d at 523. Nevertheless, the Sixth Circuit has recognized that "a police officer . . .

can 'rely on his [or her] training and experience that drug dealers frequently carry weapons,'" but that "some corroboration that particular individuals are involved in dealing drugs" is required before a frisk for weapons is appropriate. *Id.* at 524 (quoting *United States v. Branch*, 537 F.3d 582, 589 (6th Cir. 2008)) (alteration in original). Importantly, when conducting a reasonable-suspicion analysis, reviewing courts are "not to consider factors . . . in isolation from one another." *United States v. Pacheco*, 841 F.3d 384, 391 (6th Cir. 2016) (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002)) ("A 'divide-and-conquer' analysis—where each factor is singled out and the court engages in a post-hoc search for an innocent explanation—is not permitted.).

In this case, there are several corroborating factors justifying Morgan's frisk. First, in *Noble*, the Sixth Circuit pointed to the officers' lack of knowledge of any criminal history on the part of the defendant as evidence that they lacked reasonable suspicion to conduct a pat-down. *See id.* at 523. Here, by contrast, Morgan knew that Defendant had a criminal history which included drug dealing and at least one offense that involved a deadly weapon. (*See* Doc. 161, at 20–23.) He also knew that Defendant had just returned from Atlanta—a place Morgan's experience told him was a drug-trafficking hub. (*Id.* at 39.) Morgan also knew that Defendant had made a ten-to-fifteen-minute stop at a residence, which he testified would be consistent with narcotics dealing. (*Id.* at 39.) Although these visits could have had non-criminal explanations, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Accordingly, the Court may consider these visits in its analysis of the totality of the circumstances.

9

Additionally, although Morgan's various explanations for the frisk, viewed in isolation, could have had innocent explanations, the Court may not isolate these factors from the larger body of information known to Morgan at the time. *See id.* While no single piece of information or inference of Morgan's alone is enough to justify the frisk, the totality of the circumstances was enough to warrant a reasonable belief that Defendant was armed and dangerous. *Cf. id.* at 394 ("[W]hile many of the factors here, when considered alone, cannot support a reasonable-suspicion determination, their collective weight justified [the] pat-down search[.]").

## IV. CONCLUSION

For the reasons stated herein, the Court:

1. **OVERRULES** Defendant's objections to Magistrate Judge Lee's report and recommendation (Doc. 150);

2. **ACCEPTS** and **ADOPTS** the report and recommendation (Doc. 145); and

3. **DENIES** Defendant's motion to suppress (Doc. 122).

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**